UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROBERT ALAN PALACIO, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. CV 17-5378-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Robert Alan Palacio ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Social Security Disability Insurance Benefits ("DIB"). The Commissioner's decision is affirmed and this matter is dismissed with prejudice.

**I.**

**BACKGROUND**

Plaintiff filed an application for DIB on March 24, 2014, alleging disability beginning October 1, 2013. See Dkt. 14, Administrative Record

("AR") 126-27. After Plaintiff's application was denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ"). See AR 84-90. A hearing was held on April 28, 2016, at which Plaintiff testified. See AR 49-71.

On May 26, 2016, the ALJ issued a written decision denying Plaintiff's claim for benefits. See AR 36-44. Despite finding that Plaintiff had the severe impairment of degenerative disc disease, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work.[1] See AR 38-42. The ALJ considered Plaintiff's age, education, and work experience under the Medical-Vocational Guidelines and concluded that a finding of "not disabled" was warranted. See AR 42-43.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. This action followed.

## II.
## DISCUSSION

The parties dispute whether the ALJ erred in: (1) rejecting the opinions of Plaintiff's treating physicians; and (2) rejecting Plaintiff's testimony regarding his subjective symptoms and physical limitations. See Dkt. 17, Joint Statement ("JS") at 5.

**A.   Treating Physicians' Opinions**

Plaintiff contends the ALJ did not properly credit the medical opinions of his four treating physicians: Drs. Brian Grossman, Michel Levesque, Keith Garb, and Payam Vahedifar. See JS at 5-12.

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

**1.     Applicable Law**

"Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014). When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). In so doing, the ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bray v. Comm'r of Soc. Sec. Admin, 554 F.3d 1219, 1228 (9th Cir. 2009). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

**2.     Analysis**

The opinions of Plaintiff's treating physicians are generally contradicted by the physicians retained by the Commissioner. For example, Dr. Grossman found that Plaintiff is mostly capable of light work, see AR 305-09, whereas the state's examining physician determined that Plaintiff could perform medium work, see AR 297-304. The Court's task is thus to determine whether the ALJ provided "specific and legitimate reasons that are supported by substantial

3

evidence" for rejecting Plaintiff's treating physicians' opinions. See Ghanim, 763 F.3d at 1160.

### a. Dr. Grossman's opinion

Dr. Grossman, Plaintiff's treating orthopedic surgeon, opined in July 2014 that Plaintiff could occasionally lift and carry up to 20 pounds; sit, stand, and walk for four hours in an eight-hour workday; and would need to take one to two unscheduled breaks per day. See AR 305-09. The ALJ gave "little weight" to Dr. Grossman's opinion. AR 42.

The ALJ reasonably found Dr. Grossman's limitations inconsistent with Plaintiff's capabilities as measured in other physical examinations. See id. The ALJ first pointed to Dr. Levesque's June 2014 examination notes indicating that Plaintiff had minimal back pain and a normal neurological examination. See AR 452-54. Plaintiff contends the ALJ "manufactured" an inconsistency with Dr. Levesque's examination findings by, for example, omitting that Plaintiff had "right leg pain varying in intensity from 3 to 8." JS at 9 (quoting AR 452). But Plaintiff conflates his own subjective complaints with the objective medical findings. Indeed, Dr. Levesque noted Plaintiff's lack of significant back pain standing or sitting and general lack of pain in the lumbar region, and opined that additional surgery would be "overkill," instead recommending that Plaintiff "continue conservative management." AR 452-54. More generally, the ALJ accurately stated that no examination of record found the sort of issues normally associated with Plaintiff's lumbar abnormality or any other disc anatomical associated abnormality, see AR 42, which appears to be the basis for Dr. Grossman's limitations, see AR 305. "[A]n ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1995 (9th Cir. 2004) (internal citation omitted).

4

The ALJ also explained that Dr. Grossman's limitations were inconsistent with the June 2014 findings of Dr. Babak Tashakkor, who opined that Plaintiff could perform the full range of medium work. See AR 302. Dr. Tashakkor's findings were based on formal testing performed during an physical examination. See AR 298. Those tests revealed that Plaintiff had mildly reduced range of motion and mild tenderness in the lower back, but otherwise had a normal straight leg raise test, normal station and gait, a normal neurological evaluation, and could apply 80 pounds of force with both hands. See AR 297-302. Dr. Tashakkor's independent assessment of Plaintiff's limitations provided a specific, legitimate reason for rejecting Dr. Grossman's opinion. See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (opinions of examining physicians may serve as substantial evidence if consistent with independent clinical findings).

      b.    Dr. Garb's and Dr. Vahedifar's opinions

Dr. Garb, Plaintiff's treating internal medicine physician, opined that Plaintiff could lift and carry no weight, and sit, stand, and walk less than one hour in an 8-hour workday. See AR 487-91. Dr. Vahedifar, Plaintiff's treating physical medicine and rehabilitation physician, opined that Plaintiff could occasionally lift and carry up to 20 pounds, sit up to one hour and stand or walk less than one hour in an 8-hour workday. See AR 474-81. The ALJ gave "little weight" to their opinions. See AR 42.

The ALJ reasonably found Drs. Garb and Vahedifar's "extreme assessments" were inconsistent with Plaintiff's March 2016 questionnaire and April 2016 hearing testimony indicating his pain was mostly controlled with medication. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that the ALJ properly discounted treating physician's opinion as being "so extreme as to be implausible").

5

The ALJ's basis is supported by substantial evidence. For instance, Dr. Garb opined that Plaintiff could lift and carry no weight, and would need to take unscheduled breaks "every several minutes." See AR 489-90. Nothing in the record provides any basis for these extreme restrictions, and Plaintiff himself has never claimed to have the limitations described by Dr. Garb. In fact, Plaintiff indicated he can do far more than Dr. Garb suggests—e.g., Plaintiff testified that he could pick up and carry a 24-pound case of water. See AR 68-69. As another example, Plaintiff testified he could stand 20 to 30 minutes at a time, see AR 66-67, which is inconsistent with Drs. Garb and Vahedifar's suggestion that Plaintiff could stand no more than an hour total in an eight-hour workday.

Plaintiff faults the ALJ's pain scale, which described a ten out of ten pain as "being skinned alive" or "being burned at a stake." See JS at 11 (citing AR 55). While the Court might have used a different analogy, the ALJ's description is obvious hyperbole, and there's no indication that Plaintiff did not understand what a pain scale was.

      c.    Dr. Levesque's opinion

Dr. Levesque, Plaintiff's treating neurosurgeon, completed a medical source statement in November 2014, one week after performing lumbar spine fusion surgery on Plaintiff. See AR 390-95. The ALJ referenced Dr. Levesque's progress notes but did not formally credit or discredit his opinion. See AR 41-42.

Plaintiff contends the ALJ "implicitly rejected" Dr. Levesque's November 2014 opinion by failing to mention it in the decision. See JS at 11. Even if this was error, it was harmless because it was "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (internal citation omitted). The report in question had limited probative value. Although Dr.

Levesque did indicate that Plaintiff had daily pain in his lumbar region and legs, he explicitly deferred assessing Plaintiff's functional abilities. See AR 390-95 ("To be determined in 3 months."). No follow-up questionnaire was ever completed.

Plaintiff makes no effort to explain why or how Dr. Levesque's November 2014 comments undermine the ALJ's finding that Plaintiff could perform the full range of medium work. Instead, Dr. Levesque's subsequent progress notes appear consistent with the ALJ's RFC finding. In December 2014, Dr. Levesque noted that Plaintiff was doing "very well" and denied any radiculopathy, weakness, or numbness. See AR 467. And, in May 2015, Dr. Levesque similarly indicated that Plaintiff was doing "very well," was off pain medication, had "recovered fully" from lumbar surgery, and "should return to work without limitations." AR 466. The ALJ took Dr. Levesque's findings to indicate that Plaintiff's lumbar fusion surgery alleviated his symptoms. See AR 41 (citing AR 456-63).

### B. Credibility Determination

Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony regarding his subjective symptoms and functional limitations. See JS at 27-33.

### 1. Applicable Law

The Ninth Circuit has established a two-step analysis for determining the extent to which a plaintiff's symptom testimony must be credited. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptom alleged.'" Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant testimony about the severity of her symptoms only by offering specific, clear and

7

convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). In weighing credibility, an ALJ may consider a Plaintiff's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. See Smolen, 80 F.3d at 1284. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

### 2. Analysis

At the hearing, Plaintiff testified that he stopped working as a prop maker due to back pain. See AR 52-53. He estimated his pain to be a four and a half to five without medication and a two and a half with medication. See AR 55. Plaintiff said that his medication makes him irritable and along with his pain, unable to focus. See AR 55, 64. He testified that he can walk 20 to 25 minutes, stand 20 to 30 minutes, and sit 20 to 30 minutes before needing a break. See AR 66-67. Plaintiff said he will typically lie down approximately five times per day for 15 to 20 minutes at a time. See AR 59. Plaintiff also submitted two Exertional Activities Questionnaires, which were of the same general nature as the subjective complaints from his testimony. See AR 151-53, 166-68.

First, the ALJ found that Plaintiff's subjective symptoms were not consistent with the medical evidence. See AR 40. After complaints of back pain, Plaintiff underwent a L5-S1 laminotomy and discectomy in November 2013 with good results. Subsequent progress notes indicated that Plaintiff's

radiation of pain into his lower extremities was resolved by the surgery. See, e.g., AR 353 ("Pt states that [Plaintiff] feels more mobility."), 350 ("[Plaintiff] had severe radiating right leg pain preoperatively which has resolved."), 348 ("[Plaintiff] denies radiating leg pain, numbness, tingling, or weakness."). And, although Plaintiff reported severe abdominal pain, subsequent progress notes indicated Plaintiff had an essentially normal physical presentation with minimal back pain. For instance, the ALJ referenced a February 2014 progress note completed by Dr. Grossman that indicated Plaintiff was comfortable and in no acute distress, could rise from a seated position without difficulty, had a normal gait, and had intact motor function of the lower extremities. See AR 348-49. An April 2014 lumbar examination provided the same results. See AR 343-44.

Eventually, Plaintiff's pain returned, and he received a lumbar fusion in November 2014. See AR 469. Subsequent progress notes indicated Plaintiff was doing very well and generally without pain in his back or lower extremities. See AR 400 (Dr. Grossman's May 2014 progress notes), 452-54 (Dr. Garb's June 2014 progress notes), 456-57 (Dr. Levesque's August 2014 progress notes), 467 (Dr. Levesque's December 2014 progress notes), 466 (Dr. Levesque's May 2015 progress notes).

The ALJ also reasonably concluded that despite Plaintiff's multiple lumbar surgeries, his progress notes consistently showed he had little to no difficulty with ambulation, postural movements, or had major sensory deficits. See AR 41. Indeed, even Plaintiff's treating orthopedist noted Plaintiff had "minimal axial biomechanical back pain" and "lack of severe back pain." See AR 424-54. The ALJ then explained that if Plaintiff's conditions were truly as limiting as alleged, one would expect the clinical presentation in the medical records to be highly abnormal, which was not the case. See AR 41. Instead, according to the ALJ, Plaintiff's physical examinations did not find range of

motion, muscle atrophy, motor loss, or neurological deficits typically associated with Plaintiff's lumbar abnormality or any other disc anatomical associated abnormality. See AR 41-42.

Overall, substantial evidence supported the ALJ's conclusion that the medical evidence was inconsistent with Plaintiff's allegations. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ also permissibly discounted Plaintiff's subjective symptom testimony because it was inconsistent with his daily activities. See AR 41. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Ghanim, 763 F.3d at 1165. Plaintiff testified his pain was constantly about a five without medication, with half the month being "bad days" comprised of chronic pain and chronic depression. See AR 55, 61. Yet Plaintiff engaged in a somewhat normal level of daily activity and interaction. For example, Plaintiff does yard work, mows the lawn, performs household chores, goes grocery shopping, drives, carries heavy cases of water, and goes on vacation with his family at least once a year. See AR 59-61, 66, 166-68. While the Social Security Act "does not require that claimants be utterly incapacitated for benefits," Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), the ALJ appropriately found that Plaintiff's allegations did not match his daily activities.

The ALJ also made it known during the hearing that Plaintiff's claims were inconsistent with his own statements elsewhere in the record. See Molina, 674 F.3d at 1112 ("An ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct."). For instance, Plaintiff testified that his medications caused several side effects. See AR 55-56. Yet, as the ALJ pointed out, Plaintiff's Disability Appeal form

reported no side effects. See AR 185. As another example, Plaintiff testified that he suffered from serious depression and anxiety despite denying the same to his treating physician. See AR 62-63 (citing AR 319).

Plaintiff contends the ALJ erred because Plaintiff produced objective medical evidence of his underlying impairments. Plaintiff, however, overstates the record and misses the more important point: that while the treatment records did indicate some pain and limitations, they did not show a level of limitation that would preclude Plaintiff from all work activity.

On appellate review, the Court's role is not to reweigh the evidence supporting or undermining Plaintiff's credibility. The ALJ provided sufficiently specific, clear and convincing reasons for discounting Plaintiff's subjective complaints about the severity of his physical impairment.[2]

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and this action is DISMISSED WITH PREJUDICE.

Dated: December 28, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

---

[2] The parties' joint submission also indicates a third issue, which is whether the ALJ erred in finding that Plaintiff had the ability to perform his past relevant work. See JS at 2. But the briefing does not address the issue separately, and the ALJ's decision that Plaintiff could perform his past relevant work was automatic under the Medical-Vocational Guidelines given Plaintiff's RFC. See AR 42.